<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LUCIE FAINSBERT, et al., | : | |
| | : | CIVIL ACTION NO. 06-2017 (MLC) |
| Plaintiffs, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| CHARLES CUTHBERT, et al., | : | |
| | : | |
| Defendants. | : | |

<u>**COOPER, District Judge**</u>

The defendants, Charles Cuthbert ("Cuthbert"), John Lange ("Lange"), Mary Louise Owens ("Owens"), David Hussey ("Hussey"), Margo Lauritsen ("Lauritsen"), Judi Ropes ("Ropes"), Betsy Harvey ("Harvey"), and Julia Krebs ("Krebs") (collectively, the "defendants") move to dismiss the complaint filed by the plaintiffs, Lucie Fainsbert ("L. Fainsbert") and Charles M. Fainsbert ("C. Fainsbert") (collectively, the "plaintiffs"), for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Dkt. entry no. 5.)  The Court, for the reasons stated herein, will (1) grant the motion, and (2) dismiss (a) with prejudice the claims for theft by unlawful taking, conversion, intentional infliction of emotional distress, and defamation, and (b) without prejudice the claim for tortious interference with contract.

**BACKGROUND**

I.   **The Parties & Organization**

The plaintiffs are married and reside in Somerset, New Jersey. (Compl., at ¶ 1.)  L. Fainsbert is a published author and artist, and she is a member of the American Kennel Club ("AKC") affiliated "Dog Writers Association of America." (Id. at ¶¶ 2-3.)  C. Fainsbert is a certified public accountant practicing in New Jersey. (Id. at ¶ 4.)  The plaintiffs are "longtime members" of the Mastiff Club of America (the "MCOA"). (Id. at ¶ 5.)[1]  The plaintiffs have also been "directly and personally involved with the rescue and placement of English Mastiff dogs since approximately 1990" and have rescued approximately 165 Mastiffs. (Id. at ¶ 6.)

Cuthbert was president of the MCOA on or about April 16, 2004, and he was succeeded by Owens on or about June 30, 2004. (Id. at ¶ 7.)  Lange served as the MCOA ethics committee chairman, and Hussey, Ropes, Harvey, Krebs, and Lauritsen constituted the MCOA Events Committee (the "Committee") on or about April 17, 2004. (Id. at ¶¶ 10-11.)

The MCOA is a non-profit organization that acts as a "breed-specific charter club for the English Mastiff breed . . . under the authority of the [AKC]." (Id. at ¶ 5.)  The organization is

_____

[1] The plaintiffs have timely paid the $35.00 annual dues for each year of membership in MCOA. (Compl., at ¶ 17.)

"open to persons who are interested in the breeding, care, or welfare of English Mastiff dogs." (Id. at ¶ 17.)  The MCOA has established a "Constitution and By-Laws Mastiff Club of America, Inc., which sets forth the rights and duties of MCOA members and the rules for MCOA-sanctioned events.  (Id. at ¶ 18.)  The MCOA's rules are "operative under the supervening authority of the AKC." (Id.)

## II.  The Allegations of Misappropriation

The complaint alleges that MCOA members — during 2003-2004 — "believed, on the basis of the club's financial statements dating back to 1997, that club funds were being misappropriated or otherwise diverted."  (Id. at ¶ 19.)  Because of these allegations, C. Fainsbert reviewed MCOA financial statements and tax returns on his behalf and on behalf of other club members. (Id.)  This review cost C. Fainsbert $18,000.  (Id. at ¶ 22.) After conducting this inquiry, a request for investigation (the "Request") was filed with the New York State Attorney General's Office ("NYAG") on March 8, 2004.  (Id. at ¶ 20.)  The Request alleged "blatant disregard of MCOA internal financial controls and missing or misappropriated club funds in the amount of $62,366.44."  (Id. at ¶ 21.)  The Request also named Cuthbert, Owens, Lange, Lauritsen, Ropes, Harvey, and Krebs as persons meriting investigative interest.  (Id.)

3

### III. The Arizona Dog Show & The Suspension

MCOA conducted a "sanctioned national specialty event (i.e. dog show)" (the "Arizona Dog Show") at the Arizona Plaza Hotel (the "hotel") in Tucson, Arizona, on April 16, 2004. (<u>Id.</u> at ¶ 24.)  At some point during the event, L. Fainsbert approached Cuthbert and informed him that a financial review of MCOA had been completed and that, on the basis of its findings, the Request was filed with the NYAG. (<u>Id.</u> at ¶ 25.)  L. Fainsbert showed Cuthbert the Request, and Cuthbert asked to look at it in private. (<u>Id.</u>)  L. Fainsbert consented to Cuthbert's review, but "with the stipulation that he cannot copy it and must return it very shortly." (<u>Id.</u>)  Cuthbert then left with the Request. (<u>Id.</u>)

L. Fainsbert located Cuthbert later that afternoon and demanded the return of the Request. (<u>Id.</u> at ¶ 26.)  Cuthbert returned the original documents "but boastfully admitted that he had made several copies which he refused to surrender" to L. Fainsbert. (<u>Id.</u>)  L. Fainsbert made a second demand for the return of the copies, and advised Cuthbert that if he did not return the documents, she would call for police assistance. (<u>Id.</u>)  Cuthbert refused to turn over the copies and L. Fainsbert called the Tucson Police. (<u>Id.</u>)

Two Tucson Police Officers arrived at the Arizona Dog Show at approximately 4:00 P.M. (<u>Id.</u> at ¶ 27.)  The officers spoke to Cuthbert and directed him to return L. Fainsbert's documents.

4

(<u>Id.</u> at ¶¶ 27-28.)  Cuthbert refused and stated "'I have already mailed them to my attorney.'" (<u>Id.</u> at ¶ 28.)  The officers advised L. Fainsbert that there was nothing more that they could do and that she would have to pursue the matter through alternative means.  (<u>Id.</u>)

L. Fainsbert was handed a "Notice of Hearing" (the "Notice"), advising that a hearing would be held in room 106 of the hotel at 3:00 P.M. on April 17, 2004.  (<u>Id.</u> at ¶ 29.)  The Notice alleged "misconduct during an AKC sanctioned activity." (<u>Id.</u>)  The complainants on the notice included Cuthbert, Owens, and Lange.  (<u>Id.</u>)

The MCOA Events Committee, consisting of Hussey, Lauritsen, Ropes, Harvey, and Krebs, conducted a hearing on April 17, 2004 (the "Hearing").  (<u>Id.</u> at ¶ 30.)  L. Fainsbert attended the Hearing and informed the committee that:

> (a)  She had a legally protected right to seek the assistance of law enforcement officers in response to a theft of her property[;]
> (b)  The committee had no authority under AKC rules to expel or suspend her membership[; and]
> (c)  The committee members were acting in breach of AKC rules because all but one of them are named in the [Request] and therefore have a conflict of interest.

(<u>Id.</u> at ¶ 31.)  L. Fainsbert then read a prepared statement, provided the written statement to the committee, and left the Hearing.  (<u>Id.</u> at ¶ 32.)

Hussey verbally informed L. Fainsbert at approximately 4:30 P.M. that same day, that she was "'suspended from all AKC events

and grounds,' effective immediately." (<u>Id.</u> at ¶ 33.) L. Fainsbert received written confirmation of her suspension from the Committee on April 19, 2004, with the confirmation indicating that "'the hearing committee Found Lucie Fainsbert Guilty of all charges.'" (<u>Id.</u>) The suspension was also "published in the AKC's monthly minutes, published in print and on-line, available nationally and world wide." (<u>Id.</u> at ¶ 34.)[2]

Counsel for L. Fainsbert sent a letter to AKC Executive Secretary James P. Crowley on April 22, 2004, requesting immediate reinstatement of L. Fainsbert as a member in good standing. (<u>Id.</u> at ¶ 35.) Counsel asserted that the suspension was in violation of AKC rules and regulations. (<u>Id.</u>) Thereafter, L. Fainsbert received a letter from the AKC on April 27, 2004, stating that her suspension had been nullified and she was a member in good standing of the AKC. (<u>Id.</u> at ¶ 36.)

---

[2] The reference to L. Fainsbert in the AKC Monthly Minutes from May 10-11, 2004 (the "Minutes") states as follows:

> Lucie Fainsbert (Somerset, NJ) was suspended by the Mastiff Club of America for conduct at its April 16, 2004 event. Specifically, Ms. Fainsbert was charged with creating a disturbance at the event when she requested the assistance of two police officers during an Agility demonstration. The AKC Staff Event Committee acted to nullify the suspension. The committee determined that the act of an exhibitor requesting police assistance during an event does not constitute conduct prejudicial to the best interest of purebred dogs, purebred dog events or the AKC.

(Dkt. entry no. 9, 6-21-06 Certif. of Hillary A. Fraenkel ("Fraenkel Certif."), at Ex. B, AKC Meeting Minutes from May 10-11, 2004.)

The plaintiffs brought this action in state court on April 21, 2006, claiming that the defendants were liable for the torts of (1) theft by unlawful taking, (2) conversion, (3) tortious interference with contract, (4) defamation (libel), and (5) intentional infliction of emotional distress ("IIED").  (Compl.)  The defendants removed the action under 28 U.S.C. § 1332(a) on May 1, 2006.  (Dkt. entry no. 1, Rm. Not.)  The defendants moved to dismiss the complaint on May 25, 2006.  (Dkt. entry no. 5.)

## DISCUSSION

### I.   Standard Of Review For A 12(b)(6) Motion

A complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  On a motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff.  Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).  But a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997) (citation omitted).  "Dismissal of claims under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim upon which relief may be granted."  Jakomas v. McFalls, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. However, if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56. Fed.R.Civ.P. 12(b). An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment. Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted).[3]

The defendants, in moving to dismiss under Rule 12(b)(6), include (1) a copy of the Minutes, and (2) an affidavit signed by James P. Crowley, Secretary of the AKC (the "Crowley Affidavit") discussing (a) publication of the Hearing, and (b) the availability of the Minutes on the AKC website. (Dkt. entry no.

---

[3] "The rationale underlying this exception is that the primary problem raised by considering documents outside the complaint — lack of notice to the plaintiff — is dissipated where the plaintiff has actual notice and has relied upon the documents in framing the complaint." Jones v. Intelli-Check, Inc., 274 F.Supp.2d 615, 625-26 (D.N.J. 2003) (citations omitted).

8

5, 5-23-06 Crowley Aff.; Dkt. entry no. 9, Fraenkel Certif., at

Ex. B.)  The Court will consider the Minutes because they are

expressly relied upon in the complaint as containing the alleged

defamatory remarks about L. Fainsbert.  However, the Court will

not consider the Crowley Affidavit because it constitutes

evidence outside the complaint, and is neither relied upon by the

plaintiffs, nor integral to the complaint.[4]

## II.  Theft by Unlawful Taking/Theft by Conversion

The plaintiffs claim that Cuthbert "knowingly and

intentionally misappropriated to himself the work product of the

[Request], thereby unlawfully converting possession of that

product from the rightful owners, [the plaintiffs], to himself."

(Compl., at ¶ 45.)  The plaintiffs also claim that Cuthbert's

actions constituted a "theft of property."  (Id.)[5]  The

defendants argue that the plaintiffs have not asserted a claim

_____

[4] The plaintiffs attached to their complaint the following:
(1) "Statement[s] of Damages" by the plaintiffs; (2) Notice of
Hearing on April 16, 2004; (3) L. Fainsbert's April 22, 2004
demand to the AKC for reinstatement; (4) AKC's reinstatement
letter to L. Fainsbert; (5) Notice of L. Fainsbert's AKC
suspension; (6) MCOA Events Committee Hearing Record of April 17,
2004; (7) L. Fainsbert's written statement presented to the MCOA
Events Committee; (8) April 21, 2004 e-mail from Doreen Dysert;
and (9) MCOA Constitution and By-Laws.  The Court, because these
documents were attached to the complaint, will consider these
exhibits in resolving this motion.

[5] Although the plaintiffs designate this count as "Theft by
Unlawful Taking; Theft by Conversion," the Court has not found
and the plaintiffs have not cited to any cases recognizing a tort
of "theft by unlawful taking" in New Jersey or Arizona.

for conversion because, <u>inter alia</u>, (1) Cuthbert did not refuse to deliver the original Request upon L. Fainsbert's demand, and (2) Cuthbert did not destroy or change the quality or character of the Request by copying it.  (Def. Br., at 10-13.)  The Court finds that the plaintiffs have failed to allege sufficient facts to support a claim for conversion.

Conversion is "essentially the wrongful exercise of domination and control over the property of another in a manner inconsistent with the other person's rights in that property." <u>McAdam v. Dean Witter Reynolds, Inc.</u>, 896 F.2d 750, 771 (3d Cir. 1990) (citations omitted); <u>see</u> <u>Mueller v. Technical Devices Corp.</u>, 84 A.2d 620, 623 (N.J. 1951) ("The gist of an action in trover is conversion, that is, the exercise of any act of dominion in denial of another's title to the chattels, or inconsistent with such title.")[6]  Also,

> [t]here must be an actual conversion, or a refusal to
> deliver on demand, which is evidence of conversion,

---

[6] A district court is required to apply the law of the forum state, including choice of law provisions.  <u>Woessner v. Air Liquide, Inc.</u>, 242 F.3d 469, 472 (3d Cir. 2001).  "New Jersey [has] reject[ed the] strict lex loci delicti rule for determining the choice of law based on the place where the tort occurred."  <u>Id.</u>  Instead, New Jersey courts employ a governmental-interest analysis in choice of law decisions, requiring a two-step inquiry: (1) whether a conflict exists between the laws of the interested states; and (2) if there is a conflict, identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties.  <u>Id.</u>  Because neither party here has contested the applicable state law, the Court will apply the substantive law of New Jersey to the tort claims here.

before the detention becomes unlawful.  To constitute a
conversion of goods there must be some repudiation by the
defendant of the owner's right, or some exercise of
dominion over them by [the defendant] inconsistent with
such right, or some act done which has the effect of
destroying or changing the quality of the chattel. . . .

[W]here possession of chattels is lawfully acquired,
a demand therefor and refusal to deliver is generally
necessary before an action in trover and conversion will
accrue.  A demand and refusal do not of themselves amount
to a conversion, but are evidence from which a jury may
find that a conversion had been committed.  The demand,
however, must be made at a time and place and under such
circumstances as [the] defendant is able to comply with
if he is so disposed, and the refusal must be wrongful.
If the refusal to deliver be qualified, or there be a
question annexed to it, then the question presented is
whether it be a reasonable one.  The burden of proof of
a demand and a refusal rests upon the plaintiff.

Mueller, 84 A.2d at 623 (internal citations and quotations
omitted).

L. Fainsbert permitted Cuthbert to view the Request, and
"consented [to Cuthbert reviewing it in private] with the
stipulation that he cannot copy it and must return it very
shortly." (Compl., at ¶ 25.) Later that afternoon, L. Fainsbert
demanded the return of the Request and Cuthbert returned the
original documents. (Id. at ¶ 26.) However, Cuthbert admitted
to making copies of the Request and, despite L. Fainsbert's
demand that he give the copies to her, he refused to provide the
copies to her. (Id.) Therefore, the plaintiffs' claim of
conversion lies in Cuthbert's refusal to turn over the copies of
the Request because Cuthbert had lawfully acquired the original

Request from L. Fainsbert (via her consent) and turned over the original when demanded to do so by L. Fainsbert.

The plaintiffs argue that "[t]he act of providing someone with a chattel for examination does not confer [upon the recipient] a right to copy, reproduce, disseminate, or otherwise remanufacture that item." (Pl. Br., at 12.) However, the plaintiffs do not support this contention with any legal citation, or provide the Court with any case law to support their argument that Cuthbert's retention of copies of the Request constitutes conversion.[7] In fact, "an owner [cannot] state a claim for conversion when it retains originals or other copies of documents another improperly uses because the owner is not deprived of the beneficial use of the information." <u>Furash & Co., Inc. v. McClave</u>, 130 F.Supp.2d 48, 58 (D.D.C. 2001) (citation omitted); <u>see</u> <u>Pearson v. Dodd</u>, 410 F.2d 701, 706 (D.C. Cir. 1969) (concluding that conduct of two employees of senator who (1) broke into office, (2) took documents from files, (3)

---

[7] The plaintiffs characterize the Request as "intellectual property" for the first time in their opposition brief. (Pl. Br., at 12.) The plaintiffs, however, provide no case law to support the characterization of the Request as intellectual property. The plaintiffs fail to allege that the information contained in the request was confidential or proprietary. Moreover, there are no allegations that the plaintiffs took steps to protect the information contained in the Request as evidenced by the plaintiffs allowing Cuthbert to view the Request, and sending the Request to the NYAG. A copy of the request was also sent to the AKC for its review as part of L. Fainsbert's appeal of her suspension. (<u>See</u> Compl., at Ex. 4, at 2 (enclosing, for AKC's consideration, copy of Request).)

copied the documents overnight, (4) returned the originals, and (5) turned copies over to columnists, did not constitute tort of conversion because "the intermeddling [fell] short of the complete or very substantial deprivation of possessory rights in the property"). In cases, such as here, "where the alleged converter has only a copy of the owner's property and the owner still possesses the property itself, the owner is in no way being deprived of the use of [the] property. The only rub is that someone else is using it as well." FMC Corp. v. Cap. Cities/ABC, Inc., 915 F.2d 300, 303-04 (7th Cir. 1990).

The plaintiffs, except during the time that L. Fainsbert consented to Cuthbert's possession of the original Request, had and have (presumably) possession of the original Request. The plaintiffs neither allege nor can it be inferred from the other allegations that they were ever substantially deprived of the use of the Request. Also, this is not a case where the plaintiffs/owners allege that they no longer have the original document. See FMC Corp., 915 F.2d at 304 ("Where . . . the owner does not have the originals and the alleged converter has the originals or the only known copies of the originals, the retention of such property-to the exclusion of the owner-constitutes conversion.") Accordingly, the Court finds that the plaintiffs have failed to state a cause of action for conversion.

13

## III. Tortious Interference With Contract

L. Fainsbert alleges that the defendants tortiously interfered with her contract with the MCOA and the AKC by suspending her from AKC-sanctioned events. (Compl., at ¶¶ 46-49.) The defendants claim that (1) L. Fainsbert was not denied membership in the MCOA, but was "simply suspended" from AKC activities, and (2) she cannot show that she was damaged by the defendants' conduct. (Def. Br., at 14-15.)

L. Fainsbert, to establish a claim for tortious interference with contractual relations, must prove: (1) actual interference with a contract, (2) malice, and (3) actual damages. Cox v. Simon, 651 A.2d 476, 483 (N.J. App. Div. 1995). Concerning malice, "[a]n individual acts with malice when he or she intentionally commits a wrong without excuse or justification." Id. Moreover, a party's conduct is intentional "if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Dello Russo, M.D. v. Nagel, 817 A.2d 426, 434 (N.J. App. Div. 2003) (citations and quotations omitted). "However, the fact that a breaching party acted to advance [its] own interest and financial position does not establish the necessary malice or wrongful conduct." Id. (citations omitted).

Concerning the second element — malice — L. Fainsbert alleges that the defendants intentionally subjected her to a

hearing and suspended her from AKC-sanctioned events in
retaliation for sending the Request to the NYAG.  The defendants
contend that they had a valid justification for holding the
hearing and suspending L. Fainsbert, namely, her alleged
misconduct by confronting Cuthbert at the Arizona Dog Show with
two Tucson police officers.  However, the sufficiency of the
defendants' justification is a factual issue that the Court
cannot resolve on a motion to dismiss.

L. Fainsbert also alleges that the defendants interfered
with her rights protected by the MCOA and AKC constitutions.
(Compl., at ¶ 48.)  To the extent that L. Fainsbert is alleging
that the defendants, acting as officers, directors, or agents, of
the MCOA, interfered with her membership in the MCOA, such an
action is not maintainable.  Tortious interference with contract
claims only "protect parties to an existing or prospective
contractual relationship from outside interference."  See
Printing Mart-Morristown v. Sharp. Elecs. Corp., 563 A.2d 31, 38
(N.J. 1989) (citations omitted & emphasis added).  "Where a
person interferes with the performance of his or her own
contract, the liability is governed by principles of contract
law."  Id.

The allegations in the complaint, as described above, appear
to assert also that the defendants interfered with L. Fainsbert's
relationship in the AKC.  L. Fainsbert alleges, and the

15

defendants do not deny, that the defendants suspended her from
AKC-sanctioned events.  However, there are no specific
allegations in the complaint that L. Fainsbert had a contractual
relationship with the AKC.  The only allegations describing the
possible relationship between L. Fainsbert and the AKC is (1) L.
Fainsbert's membership in the AKC affiliated "Dog Writers
Association of America," and (2) the MCOA's "operat[ion] by
charter" under the AKC's authority.  (Compl., at ¶¶ 2-3, 5.)
These allegations are insufficient to establish a contractual
relationship between L. Fainsbert and the AKC.  As such, the
Court will dismiss this claim without prejudice to allow L.
Fainsbert — if she is, in fact, alleging that the defendants
interfered with her "contract" with AKC — to properly assert a
tortious interference with contract claim.

**IV.  Defamation**

    L. Fainsbert contends that the defendants "knew or should
have known that by improperly suspending the MCOA membership of
Lucie Fainsbert and publishing that fact by communication to the
AKC, for subsequent republication in the AKC minutes, which are
available to a world-wide audience on line, and available in
print to all AKC members, they were libeling Lucie Fainsbert."
(Compl., at ¶ 51.)  The defendants argue that, <u>inter</u> <u>alia</u>, (1)
the claim is barred by the statute of limitations, (2) the
allegations of falsehood are in fact, not false, and (3) the

16

defendants did not publish the alleged defamatory statements. (Def. Br., at 9-10; Def. Reply Br., at 6-7.)  The Court finds that L. Fainsbert has failed to assert a cause of action for defamation.

"Defamation imposes liability for publication of false statements that injure the reputation of another." Printing Mart, 563 A.2d at 44.  L. Fainsbert, to prevail on her libel claim, must allege, "in addition to damages, that the defendant[s] (1) made a defamatory statement of fact[,] (2) concerning the plaintiff[,] (3) which was false, and (4) which was communicated to a person or persons other than the plaintiff." Singer v. Beach Trading Co., 876 A.2d 885, 894 (N.J. App. Div. 2005) (citations omitted).  "Fault must also be proven." Id. (citation omitted).

Any action for libel "shall be commenced within 1 year next after the publication of the alleged libel." N.J.S.A. § 2A:14-3. New Jersey has adopted the single publication rule to determine when the statute of limitations in a defamation action begins to run. Churchill v. State of N.J., 876 A.2d 311, 316 (N.J. App. Div. 2005) (citations omitted).  The discovery rule does not apply to defamation cases. See Presslaff v. Robins, 403 A.2d 939, 941 (N.J. App. Div. 1979) (acknowledging New Jersey has rejected discovery rule in libel actions).  Further, the single publication rule applies to Internet publications. Churchill, 876 A.2d at 319.

17

The defendants rely on the affidavit of James P. Crowley in support of their statute of limitations argument.  However, the Court, as explained infra, has excluded that document from consideration as it constitutes a matter extraneous to the complaint.  There are no allegations included in the complaint from which the Court can determine when the alleged defamatory statements were published on the AKC website.  Thus, on a motion to dismiss, the Court cannot dismiss L. Fainsbert's defamation claim for potentially being filed outside the one-year statute of limitations.  That defense would normally be ruled upon in a motion for summary judgment after the completion of relevant discovery.

Without addressing the other elements of a defamation claim, however, the Court finds that L. Fainsbert has failed to allege that the defendants made a defamatory statement that was false. L. Fainsbert has alleged that (1) she called the police to get back the copies of the Request from Cuthbert, (2) complaints were filed against her by Cuthbert, Lange, and Owens alleging misconduct — the calling of police and disrupting an event — during an AKC-sanctioned activity, (3) she was notified of and attended a hearing on the complaints, and (4) the MCOA Specialty Events Committee (a) presided over the hearing, (b) found her guilty of "all charges," and (c) suspended her from all AKC events and grounds.  (Compl.)  Also, the publication in the

18

Minutes, merely repeats that L. Fainsbert was (1) suspended by
the MCOA, and (2) "charged with creating a disturbance at the
event when she requested the assistance of two police officers
during an Agility demonstration." (Minutes.)  The Minutes also
states that the AKC nullified the suspension and gave the reasons
for nullifying the suspension.  (Id.)  None of the statements in
the Minutes are false.  The fact that the AKC nullified the
suspension or whether the defendants had proper grounds to
suspend L. Fainsbert does not falsify the statements in the
Minutes.  As such, L. Fainsbert has failed to identify any false
statement published by the defendants, and her defamation claim
cannot proceed.

**V.   Intentional Infliction of Emotional Distress**

    The plaintiffs contend that the defendants intentionally
inflicted emotional distress because they (1) should have known
that they were "deeply committed" to English Mastiff dogs, and
(2) "were motivated by anger and malice at being named as
subjects of an Attorney General's investigation." (Compl., at ¶
55.)  The plaintiffs also allege that "[t]he proceedings against
Lucie Fainsbert were without substantive merit, unlawful, and
purely retributive, as all but one of the complainants and events
committee members were subjects of the [Request]." (Id.)  The
plaintiffs assert that they "have been emotionally tormented,
humiliated, and upset by these tortious acts, and they believe

19

that so distressing them was the intent and purpose of [the d]efendants' acts."  (Id. at ¶ 56.)  The defendants argue that the plaintiffs have failed to allege (1) that the defendants' conduct was extreme and outrageous, or (2) any "severe" emotional distress.  (Def. Br., at 20.)  The Court finds that the plaintiffs have failed to set forth a cognizable claim for IIED.

To support a claim for IIED, the plaintiffs must show that (1) the defendants acted intentionally or recklessly, (2) the defendants' conduct was extreme and outrageous, (3) the defendants' actions were the proximate cause of the plaintiffs' emotional distress, and (4) their distress was "so severe that no reasonable [person] could be expected to endure it."  Buckley v. Trenton Sav. Fund Soc'y, 544 A.2d 857, 863 (N.J. 1988).  The plaintiffs must prove that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id.  "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not give rise to liability for IIED.  Taylor v. Metzger, 706 A.2d 685, 694 (N.J. 1998).

The complaint here, construed most favorably to the plaintiffs, alleges that the defendants — all except for Hussey having been named in the Request and allegedly acting with a conflict of interest — suspended L. Fainsbert "from any and all

20

privileges of AKC[, and from] participat[ion] in any events from 4:30 p.m. on April 17, 2004," for creating a disturbance during the Arizona Dog Show.  Courts have refused to impose liability in cases involving more outrageous conduct than here.  Ramirez v. United States, 998 F.Supp. 425, 434 (D.N.J. 1998) (IIED claim dismissed where plaintiff detained for over two and half hours based on unreasonable assumption that he was person named in warrant); Zamboni v. Stamler, 847 F.2d 73, 80 (3d Cir. 1988) (IIED claim insufficient where defendant constantly harassed plaintiff in workplace causing physical and psychological problems).  The Court finds that the defendants' conduct did not rise to the level necessary to maintain a claim for IIED.

The Court further finds that the plaintiffs have failed to allege emotional distress so severe that no reasonable person could be expected to endure it.  The plaintiffs are required at least to allege the kind of illness or stress they endured for their claim to survive a motion to dismiss.  Buckley, 544 A.2d at 864-65.  Mere allegations of aggravation or embarrassment, without more, are insufficient for a claim of IIED.  See id. at 864 (concluding complaints of "aggravation, embarrassment, an unspecified number of headaches, and loss of sleep" insufficient to establish severe emotional distress).  The plaintiffs' allegations of "emotional torment," humiliation, and being upset by the defendants' conduct thus are insufficient for a claim of IIED.

21

The plaintiffs have also failed to allege the particular type of illness or stress that they suffered.  Plaintiffs must assert that they sought treatment for their alleged distress. Mardini v. Viking Freight, Inc., 92 F.Supp.2d 378, 384-85 (D.N.J. 1999) (granting motion to dismiss IIED claim because plaintiff did not seek medical assistance or allege specific ailments); Harris v. Middlesex County Coll., 801 A.2d 397, 405-06 (N.J. App. Div. 2002) (affirming IIED dismissal where plaintiff failed to allege need for psychiatric counseling); Aly v. Garcia, 754 A.2d 1232, 1237 (N.J. App. Div. 2000) (stating IIED claim should be dismissed where no evidence that plaintiffs sought medical treatment for alleged distress).  The plaintiffs have not alleged that they sought medical treatment for their distress. Therefore, for the reasons stated above, the plaintiffs' IIED claim is without merit.

## CONCLUSION

The Court, for the reasons discussed, finds that the defendants have demonstrated that the plaintiffs have failed to allege cognizable claims against them for theft by unlawful taking, conversion, IIED, tortious interference with contract, or defamation.  Accordingly, the Court will (1) grant the motion, and (2) dismiss (a) with prejudice the claims for theft by unlawful taking, conversion, intentional infliction of emotional distress, and defamation, and (b) without prejudice the claim for

tortious interference with contract.  The Court will issue an appropriate order and judgment.

```
                                    s/ Mary L. Cooper
                                MARY L. COOPER
                                United States District Judge
```